UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | 3:10-cv-08142 JWS |
| vs. ) | ORDER AND OPINION |
| JOSEPH LIPARI, *et al.*, ) | [Re: Motions at Dockets 37 & 47] |
| Defendants. ) | |

### I. MOTIONS PRESENTED

At docket 37, plaintiff the United States of America ("the government") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants Joseph Lipari and now-deceased Eileen Lipari ("the Liparis") did not respond to the government's motion. At docket 47, defendant Exeter Trinity Properties, LLC ("Exeter") opposes the motion and cross-moves for summary judgment in its favor. The government responds to Exeter's cross-motion at docket 52, and its reply is at docket 53. Exeter's reply is at docket 55.

## II.  BACKGROUND

The Liparis were advised by Jimmy Chisum ("Chisum").  Chisum is a "known promoter of tax avoidance schemes"[1] and has been convicted of tax evasion in the Eastern District of Oklahoma.[2]  Eileen Lipari attended and taught at Chisum's seminars.  The Liparis did not file tax returns for tax years 1994 through 2004 until 2007.  Assessments against Joseph Lipari for the period from 1994 through 1997 total $481,860.73; assessments against Eileen Lipari for the same period total $178,834.09; assessments against the Liparis for joint years 1993 and 1998 through 2004 total $300,454.63.  The United States seeks to recover those amounts and to foreclose its federal tax liens on property at 1001 South Sixth Street in Cottonwood, AZ.

The Liparis purchased the subject property in 1989.  The property cost $105,000; the Liparis paid $35,000 down and took out a mortgage for the remaining $70,000.  The mortgage was fully paid as of March 22, 1993.  Two days after paying off the mortgage, Chisum or his wife Donna filed a warranty deed–previously executed by the Liparis in 1992–which transferred the property to the Ponderosa Trust.  Donna Chisum was the trustee.  The Liparis received $10 and some certificates with no value.

Even though title to the property had been transferred, the Liparis continued to live at the subject property, without paying rent, and Joseph Lipari operated his chiropractic business from the residence.  The Liparis deducted expenses associated with Joseph Lipari's business for tax years 1994 through 2004.  The Liparis depreciated the residence on their individual tax returns for tax years 1999 through 2002.

On September 1, 1999, a warranty deed was recorded which transferred the residence from Ponderosa Trust to Exeter.  Exeter was incorporated in 1999.  Chisum was its statutory agent, and Hunter King LLC, owned by Eileen Lipari, was one of its

---

[1] *Lundgren v. C.I.R.*, 92 T.C.M. (CCH) 171 (2006).

[2] *United States v. Chisum*, 502 F.3d 1237 (10th Cir. 2007).

members. On August 5, 2003, the IRS filed nominee tax liens against Exeter as the nominee, transferee, or alter-ego of Joseph and Eileen Lipari.

In 2006, the Liparis asked Chisum to transfer control of the property to Elmer Veld ("Veld")[3] because Chisum was going to prison. Eileen Lipari met Veld, a friend of Chisum's, at one of Chisum's seminars. In November 2007, Veld evicted the Liparis. He told them that they owed rent and that they were in violation of their original contract and rental agreement, which Veld had never seen. Eileen Lipari was unaware of an original contract or rental agreement. In February 2008, Veld amended Exeter's articles of incorporation. Golden Kiwi Trust, of which Veld was trustee, and the Iron Insulator Trust, of which Terry Major ("Major") was trustee, became members of Exeter and Hunter King LLC was dropped. Major, a "student" of Veld's, currently resides at the subject property.

The government filed suit in August 2010 to bring the assessments against the Liparis to judgment and to enforce the tax liens on the subject property pursuant to 26 U.S.C. § 7403.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[5] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving

---

[3]The Liparis knew Veld as "Phillip O'Neill"–a pseudonym.

[4]Fed. R. Civ. P. 56(a).

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6]*Id.*

party.[7] The reviewing court may not weigh evidence or assess the credibility of witnesses.[8] The burden of persuasion is on the moving party.[9]

## IV.  DISCUSSION

### A.  The Assessments Against the Liparis Have Not Been Disputed

The government has presented evidence supporting the IRS's assessments against the Liparis for tax years 1993-1996 and 1998-2004.  Specifically, the government has Forms 4340 for each of those tax years.[10]  Because the Liparis have not presented any evidence to the contrary, there is no disputed issue of material fact preventing summary judgment in the government's favor with respect to the tax assessments against them.  Although Exeter has opposed the government's motion, its opposition is limited to the government's foreclosure claim.  The government has not supported the assessments for tax year 1997.  Without the assessments for tax year 1997, total assessments against Joseph Lipari for the period from 1994 through 1996 total $401,670.44; assessments against Eileen Lipari for the same period total $142,384.88; assessments against the Liparis for joint years 1993 and 1998 through 2004 total $300,454.63.

### B.  The Government's Foreclosure Claim

The government advances two theories in support of its claim for foreclosure. First, the government argues that the conveyances of the subject property–from the Liparis to the Ponderosa Trust and from the Ponderosa Trust to Exeter–were fraudulent conveyances and should be set aside.  In the alternative, the government alleges that Exeter is the alter-ego of the Liparis.

---

[7] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[8] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[10] Docs. 39-1, 39-2 at 1–28.  Forms 4340 are self-authenticating, admissible public records under Federal Rules of Evidence 902(1) and 803(8).  *See Hughes v. United States*, 953 F.2d 531, 539–40, (9th Cir. 1992).

**1. Fraudulent Conveyance**

A transfer of property that is undertaken to avoid tax liability may be set aside if it is fraudulent under state law.[11] In Arizona, a transfer is fraudulent "if [a] debtor made the transfer . . . with actual intent to hinder, delay or defraud any creditor."[12]

Among the factors bearing on actual intent to defraud are 1) whether the transfer was to an insider,[13] 2) whether the debtor retained possession or control of the transferred property,[14] 3) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred,[15] and 4) whether the transfer occurred shortly before of after a substantial debt was incurred.[16]

Given Chisum's relationship to the Liparis as their "advisor," Chisum is properly considered an insider. After the subject property was transferred to the Ponderosa Trust, the Liparis continued to live there and thus retained possession of it. The Liparis also deducted business expenses relating to the property and depreciated it on their tax returns. The consideration received–$10 and worthless certificates–was nowhere near the subject property's $105,000 purchase price. Finally, the transfer of the property to the Ponderosa Trust occurred in the year before the Liparis stopped filing federal tax returns. Because actual intent may be inferred from the circumstances of the

---

[11] *See United States v. Ranch Located in Young, Ariz.*, 50 F.3d 630, 632 (9th Cir. 1995) (applying Arizona law to set aside a fraudulent conveyance to a criminal defendant in an *in rem* action for criminal forfeiture). *See also* 28 U.S.C. § 3003(b)(1) (United States may rely on state law "to collect taxes or to collect any other amount collectible in the same manner as a tax" under the Federal Debt Collections Procedures Act).

[12] A.R.S. § 44-1004(A)(1).

[13] *Id.* § 44-1004(B)(1).

[14] *Id.* § 44-1004(B)(2).

[15] *Id.* § 44-1004(B)(8).

[16] *Id.* § 44-1004(B)(10).

transaction,[17] the government has presented evidence sufficient to support its position that the transfer of the subject property from the Liparis to the Ponderosa Trust was fraudulent.

In the alternative to actual intent, a transfer is fraudulent if the debtor made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer," provided "the debtor . . . believed or reasonably should have believed that he would incur[] debts beyond his ability to pay as they became due."[18]  Similarly, because the transfer of $105,000 property was made in exchange for $10, and because the Liparis reasonably should have believed that they would incur substantial debts when they stopped filing federal tax returns, the government's evidence supports its position that the conveyance was constructively fraudulent as well.

Exeter maintains that the Liparis transferred the property to the Ponderosa Trust for estate planning purposes.[19]  Specifically, to protect it from their estranged daughter and ensure that the property would go to charity.[20]  Joseph Lipari also stated, however, that the transfer "was supposed to protect us in the sense of if we got sued, we couldn't get sued personally because we don't own anything."[21]  Exeter also points out that there are alternative explanations for the circumstantial evidence that the conveyance was fraudulent.  For instance, with respect to the Liparis deducting business expenses related to the subject property and depreciating it on their tax returns, Exeter argues that the Liparis obviously did not understand the tax code–depreciation was inconsistently taken and the business expense deductions only indicate a belief that

---

[17] *See, e.g.*, *In re Marriage of Benge*, 726 P.2d 1088, 1092 (Ariz. Ct. App. 1986).

[18] A.R.S. § 44-1004(A)(2)(b).

[19] *See, e.g.*, doc. 48-2 at 2.

[20] Doc. 48-2 at 2; doc. 49-3 at 3.

[21] Doc. 48-2 at 4.

they could deduct business expenses (regardless of ownership of the property).[22] Exeter also argues that not paying rent could be considered a form of consideration. Finally, Exeter emphasizes that, when the Liparis were evicted from the subject property, they left and that behavior is inconsistent with a belief that they owned it.

The question is whether a reasonable jury could find for Exeter on the question of intent. Although the circumstantial evidence supports the conclusion that the transfer was fraudulent, deposition testimony from the Liparis supports the proposition that the conveyance was undertaken for estate planning purposes. Because the evidence (on the government's motion) must be viewed in the light most favorable to Exeter, Joseph Lipari's statement that the conveyance would protect him and his wife from creditors cannot be viewed to conflict with Exeter's theory. The supposed protection could have been an ancillary benefit to the intended method of estate planning. Moreover, given the standard of review, for purposes of this motion, the court is required to accept Exeter's alternative explanations for the circumstantial evidence in question. Consequently, summary judgment on the government's foreclosure claim is inappropriate under the government's fraudulent conveyance theory.

**2. Alter Ego**

The government maintains, in the alternative, that Exeter is a nominee or alter ego of the Liparis, and therefore, that the court should disregard Exeter's nominal ownership interest.[23] The question is whether transfer of title from the Liparis to the Ponderosa Trust (and subsequent transfer to Exeter) shield the subject property from the federal tax liens on the Liparis' property.[24] "Even where a taxpayer has structured a

---

[22] The government argues in its reply that "Exeter is speculating and it cannot defeat the United States' summary judgment motion with speculation." Doc. 52 at 9. The government confuses speculation with an alternative explanation of the same evidence.

[23] *See, e.g.*, *Wolfe v. United States*, 798 F.2d 1241, 1243–44 (9th Cir. 1986).

[24] *See* 26 U.S.C. § 6321 ("If any person liable to pay any tax neglects to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property . . .

-7-

transaction so that it satisfies the formal requirements of the Internal Revenue Code, legal effect will be denied if its sole purpose is to evade taxation."[25]

The government identifies one factor–whether the transferor remains on the property and continues to treat it as his or her own after the transaction–which supports its theory. Exeter responds that the government's alter ego theory must fail because the Liparis did not have control over the Ponderosa Trust. The overarching issue is whether the initial transfer of the subject property–from the Liparis to the Ponderosa Trust–was undertaken to evade taxation. As discussed in the previous section, there are genuine issues of material fact precluding summary judgment on the issue of the Liparis' intent in making the transfer.

**C. Exeter's Cross-Motion**

The issues of material fact that preclude summary judgment in favor of the government also preclude summary judgment in favor of Exeter.

## V.  CONCLUSION

For the reasons above, the government's motion at docket 37 is **GRANTED** in part and **DENIED** in part as follows:

1) It is granted with respect to the tax assessments against Joseph Lipari, individually, for tax years 1994 through 1996, the tax assessments against Eileen Lipari, individually, for tax years 1994 through 1996, and the tax assessments against the Liparis jointly for tax years 1993 and 1998 through 2004.

---

belonging to such person.").

[25] *Neely v. United States*, 775 F.2d 1092, 1094 (9th Cir. 1985).

2) It is denied with respect to the government's claim for foreclosure on the tax liens on the South Sixth Street property.

Exeter's cross-motion at docket 47 is **DENIED**.

DATED this 12th day of March 2012.

                                              /s/ JOHN W. SEDWICK
                                      UNITED STATES DISTRICT JUDGE